IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

CARLEST M. JOHNSON,                                                                PLAINTIFF
ADC #142752

v.                                           2:22CV00108-JTK

CONNIE L. HUBBARD, et al.                                                          DEFENDANTS

**ORDER**

APRN Connie L. Hubbard and Doctor/Regional Medical Director Chris Horan (collectively "Defendants") filed a Motion for Summary Judgment on the merits of Plaintiff's claims, Brief in Support, and Statement of Facts. (Doc. Nos. 24-26, 32). Plaintiff has responded. (Doc. No. 30).

After careful consideration, and for the reasons set out below, Defendants' Motion (Doc. No. 24) is GRANTED.[1]

**I.    Plaintiff's Complaint**

Carlest M. Johnson ("Plaintiff") is incarcerated at the Ouachita River Unit of the Arkansas Division of Correction ("ADC"). Plaintiff sued Defendants in their personal and official capacities under 42 U.S.C. § 1983. (Doc. No. 2). Plaintiff alleged deliberate indifference to his serious medical needs. (Doc. Nos. 2, 5).

Plaintiff filed this lawsuit on June 13, 2022. (Doc. No. 2 at 1-2). Plaintiff injured his knee while playing basketball on July 7, 2021 (Id. at 3). Plaintiff was taken to the infirmary and was seen by Defendant Hubbard, who sent him to the hospital; when Plaintiff returned to the Unit, he could not walk on his left leg at all. (Id.). The following day Defendant Hubbard saw Plaintiff

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings and order the entry of a final judgment. (Doc. No. 14).

again.  (Id.).  Plaintiff told Defendant Hubbard that he was informed that he needed an MRI.  (Id.).  According to Plaintiff, Defendant Hubbard told Plaintiff that his knee was too swollen for an MRI and told Plaintiff that she would not order an MRI.  (Id.).  Defendant Hubbard "then noted [Plaintiff's] CT and 4view x-ray was negative for a fracture."  (Doc. No. 2 at 3).  On July 12, 2021, Plaintiff tried to get a wheelchair because the crutches he had were not working; Defendant Hubbard denied Plaintiff's request.  (Id.).

Defendant Hubbard saw Plaintiff again on July 23, 2021 and told her that something is wrong and again asked for an MRI.  (Id.).  Defendant Hubbard again told Plaintiff that his knee was too swollen, but that she would order another 3view x-ray.  (Id.).  Plaintiff requested a knee brace from Defendant Hubbard on July 29, 2021.  (Id.).

Plaintiff's knee problems continued.  After two months of Plaintiff complaining about the problems with his knee, Defendant Hubbard recommended that Plaintiff be seen by an orthopedic doctor.  (Id. at 4).  But Defendant Horan denied the request.  (Doc. No. 2 at 4).

Plaintiff continued complaining about his knee.  After approximately three-and-a-half months of Plaintiff's persistent complaints about his knee, Defendant Horan approved an orthopedic consult.  (Id. at 5).  On November 3, 2021, Plaintiff was seen by Dr. Birk, who told Plaintiff he needed surgery, but that the surgery might not be effective due to the amount of time that passed since the injury.  (Id.).  Plaintiff had surgery on November 18, 2021.  (Id.).  Despite the surgery, Plaintiff still could not sit and raise his leg out straight.  (Id. at 6).  On April 19, 2022, Plaintiff had a second surgery "for the same problem because it come undone."  (Id. at 7).  Plaintiff still cannot straighten his knee when he lifts it up.  (Doc. No. 2 at 7).  Plaintiff alleges Defendants were deliberately indifferent to his serious medical needs by delaying his MRI and

consult with an orthopedic doctor. Plaintiff seeks damages and transfer to rehabilitation. (Id. at 8).

## II.     Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

In addition, "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party...shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ." Local Rule 56.1, Rules of the United States District Court for the Eastern and Western Districts of Arkansas. Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. FED. R. CIV. P. 56(e).

**III.     Facts and Analysis**

Plaintiff alleged deliberate indifference to his serious medical needs.

**A.     Personal Capacity Claims—Deliberate Indifference to Serious Medical Needs**

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. CONST. AMEND. VIII.  This prohibition gives rise to the government's duty to provide medical care to prisoners. "The government has an 'obligation to provide medical care for those whom it is punishing by incarceration.'"  Allard v. Baldwin, 779 F.3d 768, 772 (8th Cir. 2015) (citing Estelle v. Gamble, 429 U.S. 97, 103 (1976)).  It follows that the "Eighth Amendment proscribes deliberate indifference to the serious medical needs of prisoners."  Robinson v. Hager, 292 F.3d 560, 563 (8th Cir. 2002) (internal citation omitted).  "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'"  Schuab v. VonWald, 638 F.3d 905, 914 (8th Cir. 2011) (internal citation omitted).  "Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs."  Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). To succeed on a claim of deliberate indifference to a medical need, a plaintiff must show he had an objectively serious medical need and prison officials had actual knowledge of, but deliberately disregarded, that need.  See Washington v. Denney, 900 F.3d 549, 559 (8th Cir. 2018); McRaven v. Sanders, 577 F.3d 974, 981 (8th 2009).

**1.     Defendants' Motion**

According to Defendants, plaintiff injured his knee on July 7, 2021.  (Doc. No. 26 at ¶ 2). Plaintiff was taken to the Jefferson Regional Center Emergency Room where he was given a CT

and X-ray.  (Doc. No. 26 at ¶ 2; Doc. No. 26-1).   Neither the CT nor X-ray revealed any fracture. (Doc. No. 26 at ¶ 2; Doc. No. 26-1).   Plaintiff was diagnosed with a contusion to the left knee an discharged.  (Doc. No. 26 at ¶ 2; Doc. No. 26-1).

The following day, Defendant Hubbard examined Plaintiff and reviewed the CT and X-ray results.  (Doc. No. 26 at ¶ 3; Doc. No. 26-1).   Defendant Hubbard ordered crutches for Plaintiff and no duty for 14 days.  (Doc. No. 26 at ¶ 3; Doc. No. 26-1).

On July 23, 2021, Defendant Hubbard examined plaintiff during a follow-up visit and found palpable effusion to the left knee.  (Doc. No. 26 at ¶ 4; Doc. No. 26-2).   Plaintiff complained that he could not raise his leg.  (Doc. No. 26 at ¶ 4; Doc. No. 26-2).   Defendant Hubbard ordered alpha-lipoic acid, acetaminophen, and another x-ray.  (Doc. No. 26 at ¶ 4; Doc. No. 26-2).   Defendant Hubbard was observed to be weight bearing and able to bend his left knee. (Doc. No. 26 at ¶ 4; Doc. No. 26-2).

On July 29, 2021, Defendant Hubbard ordered a knee brace for Plaintiff.   (Doc. No. 26 at ¶ 5; Doc. No. 26-4 at 1-2).   The following day, Defendant Hubbard examined Plaintiff during a follow-up visit.  (Doc. No. 26 at ¶ 6; Doc. No. Doc. No. 26-4 at 2).   Defendant Hubbard reviewed the x-ray results, which were consistent with palpable effusion.  (Doc. No. 26 at ¶ 6; Doc. No. 26-4 at 2).   Defendant Hubbard ordered crutches, an ace wrap, and no duty for 14 days.  (Doc. No. 26 at ¶ 6; Doc. No. 26-4 at 2).   Plaintiff was observed to be weight-bearing with crutches and able to bend his left knee.  (Doc. No. 26 at ¶ 6; Doc. No. 26-4 at 2).

On September 7, 2021, Defendant Hubbard examined Plaintiff's knee again.  (Doc. No. 26 at ¶ 8; Doc. No. 26-6).   She ordered gabapentin and requested an orthopedic consult.  (Doc. No. 26 at ¶ 8; Doc. Nos. 26-6, 27-7).

Defendant Horan reviewed Plaintiff's x-ray results on September 9, 2021, and denied the request for an orthopedic consult.  (Doc. No. 26 at ¶ 9; Doc. No. 26-8).  Instead, he recommended continuation of conservative treatment and job restrictions.  (Doc. No. 26 at ¶ 9; Doc. No. 26-8).

Roughly six weeks later, on October 28, 2021, Defendant Hubbard saw Plaintiff again for his knee issue.  (Doc. No. 26 at ¶ 10; Doc. No. 26-9).  Defendant Hubbard noted no palpable effusion, no gross crepitus, and no gross laxity.  (Doc. No. 26 at ¶ 10; Doc. No. 26-9).  Defendant Hubbard continued orders for a knee brace and cane.  (Doc. No. 26 at ¶ 10; Doc. No. 26-9).  She also resubmitted the request for an orthopedic consult.  (Doc. No. 26 at ¶ 10; Doc. No. 26-9).

An outside orthopedic specialist examined Plaintiff on November 3, 2021.  (Doc. No. 26 at ¶ 10; Doc. No. 26-10).  For Radiology, the report indicates that "AP and lateral show a low-lying patella with a s small calcified fragment approximately 2 and half inches away."  (Doc. No.26-10).  Plaintiff was assessed with "a complete left quadriceps rupture."  (Doc. No. 26 at ¶ 11; Doc. No. 26-10).

Thomas Braswell, a family practice and emergency medicine physician in Arkansas, reviewed Plaintiff relevant medical records.  (Doc. No. 26-11).  In Dr. Braswell's opinion, the care Defendants provided to Plaintiff "was appropriate, adequate, and timely."  (Id.).

2. **Plaintiff's Response**

Plaintiff does not contest the accuracy of the medical records.  Rather, he maintains that Defendant Hubbard violated his rights "because it took about 4 months and 11 days to get me in to see a surgeon."  (Doc. No. 30 at 1).  Plaintiff asserts that Defendant Horan violated Plaintiff's rights because he knew of Plaintiff's pain and suffering through Defendant Hubbard's medical records and nonetheless denied Defendant Hubbard's first request for an orthopedic consult.  (Id.

at 1-2).   Plaintiff points out the number of times he sought medical help about his knee.   (Id. at 5, 6, 7, 9, 10, 11, 12).   The Court notes that Plaintiff did not see Defendant Hubbard on each occasion he complained about his knee—he saw other providers, as well.   (Id.).   Plaintiff also submitted one page from his medical records from the Jefferson Regional Medical Center.   (Id. at 8).   That page reflected that "on plain films [it] looks like there is an acute [fracture] of the patella."   (Id.).  The gist of Plaintiff's Response is that Defendants failed to do their job properly and intentionally denied him an MRI based on the symptoms with which he presented.

### 3. No Remaining Material Facts in Dispute

Upon the Court's request, Defendants provided Plaintiff's records from his July 7, 2021 visit to the Jefferson Regional Medical Center emergency room.   (Doc. No. 32-1).   While x-rays seemed to indicate that Plaintiff's patella was fractured, the CT scan performed that same day ruled out any fracture.   (Id. at 15).   The CT findings were that "[t]here is a bipartite patella with separation of the superolateral fragment in the superior direction.   No joint dislocation is seen. No radiopaque foreign bodies are demonstrated.   No acute fracture is demonstrated."   (Id.).   The record further provides: "Impression: Bipartite patella.   No evidence for acute fracture.   If there is persistent pain, consider nonemergent MRI for further workup."   (Id. at 16).   Plaintiff's discharge instructions were to "ice and elevate" and "weight bear to tolerance."   (Id. at 18).   The discharge diagnosis was "bipartite patella" and "patellar contusion."   (Id.).   Plaintiff was prescribed ibuprofen.   (Doc. No. 32-1 at 19).

Plaintiff's harm in this case arose from a ruptured quadricep.   Plaintiff's July 7 visit to the hospital provided no indication that he had a ruptured quadricep.   Rather, Plaintiff was diagnosed with deep bruising to his patella and bipartite patella.   Defendant Hubbard was aware of Plaintiff's diagnosis and took that into account in providing Plaintiff medical care.   (Doc. Nos. 26-6 to 26-

7, for example).   Defendant Horan was working from the same medical records.   (Doc. No. 26-8).   It is undisputed that Plaintiff waited approximately three-and-a-half months before Defendant Horan approved an outside consult, and the Court is troubled by the wait.   Yet the record does not reflect that Defendants were aware of a serious risk to Plaintiff's health and ignored that risk.   While negligence may have played into the delay in approving Plaintiff's outside consult, "[m]ere negligence is not sufficient to support a cause of action under § 1983."   Davis v. Hall, 992 F.2d 151, 153 (8th Cir. 1993).

Where, as here, Defendants have moved for summary judgment, Plaintiff "was required 'to discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.'"   Fatemi v. White, 775 F.3d 1022, 1046 (8th Cir. 2015) (internal citation omitted).   Plaintiff has not, however, met proof with proof to establish facts in dispute that would preclude summary judgment in Defendants' favor.   Wilson v. Miller, 821 F.3d 963, 970 (8th Cir. 2016) (allegations must be substantiated with sufficient probative evidence); Bolderson v. City of Wentzville, Missouri, 840 F.3d 982, 986-87 (8th Cir. 2016) (noting plaintiff's duty to meet proof with proof in affirming summary judgment in defendant's favor).   No reasonable jury could find that Defendants ignored Plaintiff's serious medical needs.   And even if there was a violation, the Court is not aware of clearly established law that would have put Defendants on notice that their actions were unlawful.   As such, Defendants are entitled to qualified immunity.

    **B.**    **Official Capacity Claims**

Plaintiff sued Defendants in their official and personal capacities.   Plaintiff's official capacity damages claims against Defendants are the equivalent of claims against their employer, Wellpath (Doc. No. 6 at ¶ 1; Doc. No. 15 at ¶ 1).   See Sanders v. Sears, Roebuck & Co., 984 F.2d

972, 975-76 (1993). To succeed on a claim against the Wellpath, Plaintiff would have had to establish that a Wellpath policy or custom was the driving force behind the violation of Plaintiff's rights. See Id.

Plaintiff has not come forward with any evidence that a Wellpath policy or custom resulted in violation of his rights. Further, as set out above, based on facts not in dispute and viewed in the light most favorable to Plaintiff, neither Defendant violated Plaintiff's rights under the Eighth Amendment. As such, Plaintiff's official capacity claim fails.

### V.     Conclusion

IT IS, THEREFORE, ORDERED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 24) is GRANTED;

2. Plaintiff's Complaint (Doc. No. 2) is DISMISSED with prejudice.

Dated this 6th day of July, 2023.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE